In re NEWMAN.

(Circuit Court, N. D. California. March 11, 1897.)

1. HABEAS CORPUS—JURISDICTION OF COMMISSIONER.
   Upon an application for a writ of habeas corpus by one who has been committed to custody by a commissioner, the finding of the commissioner in favor of his jurisdiction is not conclusive upon the circuit court.

2. EXTRADITION—ARREST OF BRITISH SUBJECT UPON BRITISH VESSEL.
   Upon an application for extradition made on behalf of the British government, the arrest of a British subject who is seeking an asylum within the United States may be made upon a British vessel within our territory.

3. SAME.
   Upon an application for extradition, the accused being found within the territory of the United States, the court, in passing upon his plea to the jurisdiction, will not enter upon an inquiry as to whether he came here voluntarily or against his will.

This was an application by John Newman for a writ of habeas corpus.

Alfred L. Black, for petitioner.

Henry S. Foote, U. S. Atty., and Denis Donohoe, Jr., for respondent.

MORROW, District Judge. The petitioner, John Newman, alias Frank Harwood, otherwise called S. Burgess, otherwise called Butler, otherwise called Sampson, otherwise called Clare, otherwise called Lee Weller, upon complaint of the British consul general at San Francisco, was by the United States commissioner committed to the custody of the marshal, to await the action of the executive upon the demand of the British government for his extradition upon two charges of murder, alleged to have been committed in the colony of New South Wales, Australia, within the jurisdiction of said colony, and of the government of Great Britain. He thereupon sued out this writ of habeas corpus to obtain his discharge. To this writ the United States marshal has made his return that the petitioner is detained in obedience to two warrants of commitment directed to him as said marshal by the commissioner, copies of which are annexed to and made a part of this return. The first of these warrants recites that the accused, on or about the 31st day of October, 1896, at Glenbrook, within the colony of New South Wales, Australia, within the jurisdiction and government of Great Britain, committed the crime of murder,— that is to say, did feloniously, willfully, unlawfully, and of his malice aforethought, kill and murder one Lee M. Weller, a human being; that the said Frank Harwood, otherwise called S. Burgess and other aliases, was a fugitive from justice of said Great Britain, and did on or about "the ——— day of ———," 1896, flee into the jurisdiction of the United States, for the purpose of seeking an asylum; and that the crime of which the said Frank Harwood, otherwise called S. Burgess and other names, was charged, was one embraced within the treaty of extradition between the United States and Great Britain, concluded August 9, 1842, and the said Frank Harwood, otherwise called S. Burgess and other names, having been brought before him in pursuance of a warrant of arrest issued upon said complaint, and having been examined concerning the charges alleged against him, the commissioner finds that the evidence is sufficient in law to justify the commitment of the said Frank Harwood, otherwise called S. Burgess and other names, on the said charge. The second warrant is in the same form as the first, except that the charge is that the petitioner did on or about the 22d day of October, 1896, at Linden, within the colony of New South Wales, Australia, feloniously, willfully, and of his malice aforethought, kill and murder one Arthur Thomas Osborne Preston. To this return the petitioner has filed a traverse and answer to the return, in which he denies that the commissioner had any power, authority, or jurisdiction to issue said commitments, or either of them, and denies the facts set forth in each of said commitments, reciting that the petitioner is a fugitive from justice of said Great Britain, and did,

on or about the ——— day of ———, 1896, flee into the jurisdiction of the United States for the purpose of seeking an asylum. And, as an affirmative matter, the petitioner alleges that he was not found in the territory of the United States or the state of California at the time of the commencement of said proceedings, or of any of them, and in fact was not in said territory; that the petitioner was a British subject, in British territory, passing and going from one portion of British territory to another portion thereof, and at all times in British territory, and at no time seeking an asylum in the territory of the United States or in the state of California. And, as an avoidance of said return, the petitioner avers that if, during the pendency of any of the proceedings referred to in said return, he was found in the territory of the United States or of the state of California, he was brought within said territory by force and against his will, and at the instance of the British government, and of the officers of the United States, acting under the direction of the British government.

No question is raised as to the sufficiency of the testimony to authorize the commissioner to determine that there was reason to believe that the petitioner is the person charged by the complaint as having committed the crimes therein alleged, nor is any question raised as to the sufficiency of the testimony to authorize the commissioner to determine that there was sufficient cause to believe that the accused was the person who committed the offense charged. The only question raised is as to the jurisdiction of the commissioner over the subject-matter and the person of the accused, and this question is based upon the claim that the petitioner was, in the first instance, arrested on board the British ship Swanhilda, in the port of San Francisco, on the charge of having murdered Lee Weller; that the complaint was filed and the warrant issued while the petitioner was on board the vessel on the high seas; that he was taken to the city prison, and, while still in custody, he was served with and arrested upon a second warrant issued by the commissioner, charging him with the same crime as described in the first warrant. Thereafter, on the 10th day of February, 1897, while he was still in custody, he was again arrested upon a warrant of the commissioner, charging him with the crime of the murder of Preston. It is the usual practice in these cases to bring up the testimony taken before the commissioner by writ of certiorari; but, as it was claimed that the record would be unnecessarily voluminous to present the facts necessary to determine the question placed in issue by the pleadings, the petitioner was allowed to introduce original testimony in support of his petition. In support of the traverse and answer, the accused thereupon introduced testimony showing that on the 17th day of November, 1896, he signed shipping articles at Newcastle, New South Wales, and shipped on board the British ship Swanhilda, bound for San Francisco; that the vessel arrived at San Francisco on the 2d day of February, 1897, and, having come within the harbor, he was arrested on board the vessel by an officer, and taken to the city prison, where he was afterwards served and arrested upon a second warrant issued by the commis-

sioner; and thereafter, on the 10th day of February, 1897, while he was still in custody, he was again arrested upon a warrant of the commissioner charging him with the crime of murder of one Preston; that the first complaint was filed on the 4th day of January, 1897, and the first warrant issued on the same day. In rebuttal, counsel on behalf of the British government introduced testimony showing, among other things, that when the petitioner applied to Capt. Fraser, of the Swanhilda, at Newcastle, New South Wales, to be shipped as a seaman, he asked if the vessel was going to San Francisco direct. He was told it was. He then said, "You are not going to Honolulu." He was informed that the vessel was not going to that port. He then said he would ship. Before signing the shipping articles, he asked the captain if he would be discharged in San Francisco. He was informed that he would be, and he shipped with that understanding. He shipped under the name of Lee Weller. Before the vessel arrived in San Francisco, the petitioner applied to the captain to be allowed to go ashore as soon as the vessel arrived in port. The captain told him that he would be allowed to go ashore as soon as the vessel was entered. The commissioner was then called, and testified that this and other testimony had been presented to him upon the trial of the case, and the question had been raised as to his jurisdiction over the subject-matter and of the person of the accused, and that, in view of all the facts of the case, he had determined that the accused was a fugitive from justice, and thereupon he had rendered the following decision:

"Counsel for the prisoner contend that as the testimony shows that the first warrant was founded upon an affidavit made by her Brittanic majesty's consul at San Francisco while the British ship Swanhilda, upon which the prisoner was, was upon the high sea, and that such warrant was served upon the prisoner by arresting him while on board the British ship Swanhilda, in the waters of the Bay of San Francisco, that the commissioner has no jurisdiction to hear and determine the criminality of the prisoner in this matter; that the law of congress under which the commissioner acts provides only for a warrant issued 'upon a complaint made under oath charging any person found within the limits of any state, district or territory with having committed,' etc.; and. as the prisoner, at the time of the service of the first warrant on him, was on a British ship, he was on British territory, and not within the territory of the United States. I do not agree with counsel in his contention. While the act of congress referred to only provides for the arrest of a party when found within the limits of any state, district, or territory, this act must be taken in conjunction with the treaty of Great Britain under which I am acting, which provides that when a person charged with the crime of murder, etc., 'shall seek an asylum or shall be found within the territories of the other.' I find from the evidence that the prisoner was seeking an asylum in the United States, as a fugitive from justice, charged with the crime of murder.

"But counsel contend that the treaty is not self-operating; that congress has intentionally left the words 'shall seek an asylum' out of its act, and provided only for the arrest of a person found within the limits of any state, etc. In this latter contention I do not agree with counsel. The treaty is self-acting, and is equally binding with the act of congress on the commissioner and on the courts that may be called on to act in these matters. In support of this, I find that Justice Catron, in the case of In re Kaine, an alleged fugitive from Great Britain, reported in 14 How. 103, in an opinion concurred in by Mr. Justice McLean, Mr. Justice Wayne, and Mr. Justice Greer, says: 'The treaty with Great Britain was equally binding on us as the act of con-

gress, and it likewise confers jurisdiction and authority on the judges and magistrates in the respective governments to issue warrants for the apprehension of fugitives, and for hearing and considering the evidence produced against them.' And, as I have already stated, as I find from the testimony that he was a fugitive from justice, charged with the crime of murder, from Australia to this country, and seeking an asylum herein at the time when the first warrant was served on him, that, under the language of the treaty, the commissioner had full jurisdiction. Subsequently, a second warrant was served on him, founded on an affidavit issued after the arrival of the vessel within American waters, to wit, in the harbor of San Francisco, and this warrant was served on him in the city prison, according to the testimony. Later a third warrant was served on him, on an affidavit made on the 10th day of February, for the murder of Preston, while in the city prison."

The facts constituting the jurisdiction of the commissioner over the subject-matter, and over the person of the accused, were found by him in favor of his jurisdiction; and it is contended that this is sufficient, and that this court has no authority to revise the judgment of the commissioner.

In the case of In re Tom Yum, 64 Fed. 485, heard in the district court, I had occasion to examine into the whole question of habeas corpus, and the law governing that subject. In that case I rendered the following decision:

"It is well settled that the writ of habeas corpus cannot be used to review, as upon a writ of error, the decision of a judicial or quasi judicial tribunal or officer lawfully constituted by law, and acting within the proper confines of his jurisdiction; and, on the other hand, it is equally certain that the writ may be resorted to—in fact, that is one of its great functions—to inquire into the jurisdiction exercised by such tribunal or officer, for the purpose of ascertaining whether such power has been kept within its legal limits, and the proceedings therein have been according to law."

In considering the question of the jurisdiction of the commissioner in this case, I find, upon the testimony that has been introduced before me, that the accused, when arrested, although upon a British vessel, was, nevertheless, within the territory of the United States. I find further, as a fact, on the testimony that has been presented, that he was seeking an asylum within the United States. These facts bring the petitioner within the provisions of the treaty of 1842 and section 5270 of the Revised Statutes.

The claim that, as the Swanhilda was a British vessel, her decks were British territory, cannot avail the petitioner in these proceedings. The vessel was within the territorial limits of the United States for all purposes relating to the execution of the treaties and the laws of the United States. It must be remembered that the application for extradition is made on behalf of the British government, and it certainly would be an extraordinary interpretation of the law that would determine that, under the treaties and laws relating to extradition, a warrant for the arrest of a British subject could not be made upon a British vessel within our territory. In the case of In re Ezeta, 62 Fed. 965, it was held that the prisoner could not set up the mode of his capture by way of defense, following the decision of the supreme court in the case of Mahon v. Justice, 127 U. S. 700–717, 8 Sup. Ct. 1204. In that case the accused had been brought into a port of the United States by a government vessel, and although they had applied to be allowed to leave the vessel at a foreign port, and before

coming into the port of San Francisco, it was held that this fact did not affect the question of the jurisdiction of this court over the accused, after they were found within the territory of the United States; and, in passing upon the plea of jurisdiction, I declined to enter upon any inquiry as to the conduct of the navy department in bringing the fugitives to San Francisco, holding that the fact that they were found by the marshal of this district was sufficient for the purpose of the examination. The law determined in that case is applicable to the present case. The petition is therefore dismissed, and the petitioner remanded to the custody of the marshal.